

FILED

Sep 04 2018, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Oliver Younge
Younge Law Office
Indianapolis, Indiana

IN THE
COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Emilio Alfredo Morales Perez, *Appellant-Petitioner,* <br><br> v. <br><br> Lindsey Mounce, *Appellee-Respondent* | September 4, 2018 <br><br> Court of Appeals Case No. 18A-DR-457 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James Joven, Judge <br><br> The Honorable Kimberly D. Mattingly, Magistrate <br><br> Trial Court Cause No. 49D13-1303-DR-8236 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Emilio Alfredo Morales Perez ("Father") was denied parenting time with his daughter by Lindsey Mounce ("Mother"), and the trial court ordered that Father could make up "all missed parenting time." Father then asked the trial

court to reduce his child-support obligation to reflect the parenting time that he missed and is now making up, but the trial court did not do so. Because awarding Father credit for the make-up parenting time would result in an impermissible double credit, we affirm the trial court in this and all other respects.

# Facts and Procedural History

During their marriage, Mother and Father had a daughter, M.M. ("Child"), born in January 2013. The parents divorced in November 2013. Because Father "had not had overnights with the child for a while and the child still nursed," the trial court "established physical custody in Mother, with Father having parenting time to be phased in to regular year round Indiana Parenting Time Guidelines ('IPTG') parenting time, including holidays per the IPTG . . . ." July 20, 2017 Order on Petitioner's Motions for Rule to Show Cause and Modification of Custody and Parenting Time, pp. 1-2 (trial court summarizing history of case). Father was also ordered to pay child support.[1]

In April 2017, Father filed a combined motion for rule to show cause and motion to modify custody and parenting time alleging that Mother "withholds

---

[1] Father has not provided many documents that would have aided us in our review, including the November 2013 decree of dissolution, the trial court's January 2014 order granting Mother's motion to correct error (which modified physical custody as explained above), and the original child-support obligation worksheet. Although we were able to access the more recent trial-court documents in Odyssey, the older documents are not available in Odyssey.

parenting time at will and on a whim" and requesting "sole or joint legal and physical custody" of Child. April 28, 2017 Consolidated Verified Petition for Rule to Show Cause, and Motion to Modify Custody and Parenting Time, pp. 2, 4. After a hearing, the trial court issued an order in July 2017 providing that Father was to make up his missed parenting time with Child as follows:

> 18. Father shall make up all missed parenting time at days and times of his own choosing, as long as those dates are not provided at the "last minute" to Mother. Father may provide a calendar referencing the chosen dates for exercising make-up parenting time, in addition to his regular parenting time, and if so attached, shall be fully incorporated as part of this Order . . . ."

July 20, 2017 Order on Petitioner's Motions for Rule to Show Cause and Modification of Custody and Parenting Time, p. 3. Attached to the court's order was a calendar for 2017 and 2018 setting forth how Father planned to make up his missed parenting time, which amounted to 239 missed days from 2014 to 2017. *Id.*; *see also* Tr. pp. 34-35.

[4] As for Father's request to modify custody and parenting time, the court found that "Father has not met the burden required for a modification of custody at this time . . . ." July 20, 2017 Order on Petitioner's Motions for Rule to Show Cause and Modification of Custody and Parenting Time Held, p. 4. However, the court admonished Mother that if she did not obey the court's order, it would consider modifying custody or parenting time as a sanction.

[5] About two weeks later, Father filed a motion to modify his child-support obligation because he and his fiancée just had a baby. Mother responded by

filing a motion for rule to show cause, alleging that Father had failed to pay his portion of child-care expenses. At a September 19, 2017 hearing on the motions, the parents stipulated to some of the issues and said they were confident that they could resolve the remaining issues of child support and child care. They believed that they would have an agreement within ten days and would send a copy of the agreement to the court for approval.

[6] No agreement was reached. Instead, the parents engaged in a contentious discovery battle regarding Father's wages and employment contract. On October 19, 2017, Mother sent Father a second request for production of documents, specifically requesting all of Father's paystubs from May 2015 "through present" as well as his employment contract. Appellant's App. Vol. II p. 122. When Father did not timely respond, Mother's attorney sent Father's attorney multiple emails requesting copies of the documents. December 20, 2017 Motion to Compel Discovery, Exs. A-D (emails between attorneys). Although Father eventually responded to Mother's second request for production of documents, he only included his paystubs through September 2017, and he did not provide his employment contract. As a result, in late December 2017, Mother filed a motion to compel discovery asking the court to compel Father to provide his updated paystubs and employment contract. Attached to the motion were copies of the emails between Mother's attorney and Father's attorney regarding the disputed documents. On January 2, 2018, the trial court granted Mother's motion to compel and ordered Father to provide the documents within five days.

[7]     A hearing on pending issues was held on January 16, 2018. Tr. pp. 4-5. Child had just turned five years old. The trial court opened the hearing by asking Father's attorney if Father had given his employment contract to Mother pursuant to its January 2 order to compel. Father's attorney said Father hadn't done so because of the nondisclosure agreement. The court rejected this argument and explained that Father had multiple options for how to comply with discovery without violating the nondisclosure agreement, including marking it "for attorney eyes only." *Id.* at 7. The court asked for a copy of Father's employment contract, which Father's attorney eventually turned over. The court then asked Father's attorney if Father had given all of his paystubs to Mother, and Father's attorney said yes. However, Mother's attorney interjected that the last paystub she had was from September 2017. Father was instructed to hand over his 2017 end-of-year paystub to see what his actual income was for the year. Although Father did not bring a copy of his end-of-year paystub to the hearing, he was able to retrieve it using his cell phone and showed it to Mother's attorney and the court.

[8]     The attorneys and trial court then began calculating child support in court using the updated figures. The court asked the attorneys if they agreed on the number of Father's "overnights" with Child, but they did not agree. *Id.* at 29. Mother's attorney explained that she credited Father with "98 overnights" on her proposed child-support obligation worksheet because that is what Father was entitled to according to the trial court's previous orders, which hadn't been changed. *Id.*; *see also* Ind. Parenting Time Guidelines § II(D); Ind. Child

Support Guideline 6, cmt. Father's attorney, however, argued that Father should receive credit for his make-up parenting time. Mother's attorney acknowledged that Father was given make-up parenting time in the trial court's July 2017 order; however, she argued that Father "received that credit in those years even though he didn't have those overnights" and therefore Father "can't receive that credit twice." *Id.* at 30. Mother's attorney also pointed out that "once the make-up time is . . . made up, there is no order for split custody or anything." *Id.* Father's attorney, who didn't dispute Mother's attorney's double-credit argument, argued that because Father was having Child in his home "approximately half of the time, and it's going to be that way . . . throughout the rest of the year," "it's only fair that [Father] gets the credit for the time that he's actually . . . having overnights with the child." *Id.* at 30-31. Father then took the stand and testified that over the past six months (which was after the trial court awarded him make-up parenting time) he was exercising three overnights per week plus four or five full weeks. *Id.* at 33. Father said his make-up parenting time would end sometime in "Q1 or Q2 of 2019." *Id.* at 35.

[9]     At the end of the hearing, Mother asked the trial court to order Father to pay her attorney's fees related to the discovery dispute. Her attorney provided an affidavit with an itemized breakdown of her fees, which totaled $1750 and included services rendered from October 5, 2017, to January 9, 2018. The court asked Father's attorney if he wanted to cross examine Mother's attorney

regarding her fees. Father's attorney declined: "Your Honor, I'm not going to cross [Mother's attorney] on her affidavits[.]" *Id.* at 48.

[10] After the hearing, the court issued an order requiring Father to pay $163 per week in child support with a credit for "96-100 overnights," Appellant's App. Vol. II p. 25, and requiring Father and/or Father's attorney to pay Mother's attorney $1750 in attorney's fees.

[11] Father now appeals.

# Discussion and Decision

[12] We first note that Mother did not file an appellee's brief. When the appellee fails to submit a brief, we will not develop an argument on her behalf but, instead, we may reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *GEICO Ins. Co. v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014).

# I. Parenting-Time Credit

[13] Father first contends that the trial court should have given him a parenting-time credit for the actual parenting time he was exercising with Child when calculating his child-support obligation. Indiana Child Support Guideline 6 provides, "A credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." When reviewing a child-support order, we presume that the trial court's calculation of child

support is valid and will set aside the order only if clearly erroneous. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015).

[14] Father argues that he should have been credited with **all** of the parenting time that he was exercising with Child, including the make-up parenting time, and not just 96-100 overnights. He points out that he "had at the least equal parenting time with Mother for the past six months, and would have that into 2019[.]" Appellant's Br. p. 12. Following the parents' divorce, Mother was awarded physical custody of Child, and Father was awarded "parenting time to be phased in to regular year round Indiana Parenting Time Guidelines ('IPTG') parenting time." Neither parenting time nor custody has since been modified in this case. *See* Tr. p. 36 (Father acknowledging on cross-examination at the January 2018 hearing that he had not been awarded "joint or 50/50" physical custody). However, as Mother's attorney explained at the January 2018 hearing, Father already received credit for the overnights that were withheld and are now being made up and that giving him further credit for those same overnights would result in a double credit. Father did not dispute this claim below or on appeal. Accordingly, we conclude that awarding Father credit for that time would result in him receiving an impermissible double credit.

[15] To the extent Father argues that he is entitled to credit for 156 overnights (because that is the number of overnights he claimed he was exercising **before** Mother started withholding parenting time from him in 2014) instead of 96-100 overnights, Appellant's Br. p. 12, there is simply no evidence in the record that he will be exercising that amount once he makes up his missed parenting time

in 2019. And as Father conceded at the January 2018 hearing, he was awarded parenting time according to the guidelines—not more. Accordingly, the trial court did not err in giving Father a parenting-time credit of 96-100 overnights when calculating his child-support obligation.

# II. Attorney's Fees

[16] Father makes multiple arguments for why he should not be responsible for paying Mother's attorney's fees related to the discovery dispute. First, he argues that the trial court failed to hold a hearing before it granted Mother's request for attorney's fees. *See* Ind. Trial Rule 37(A)(4) (explaining that if a motion to compel discovery is granted, the trial court, "after opportunity for hearing," shall order the party and/or attorney to pay to the moving party "the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust"). But the court did hold a hearing. The majority of the hour-long hearing on Father's motion to modify child support was a conversation between the court and Father's attorney regarding discovery, the court's order to compel, and whether Father had turned over the ordered documents. And Father himself acknowledges on appeal that the trial court listened to his attorney's "'reason' for resisting compliance with discovery." Appellant's Br. p. 17. Although Father now claims that the court should have "allow[ed] for more testimony or evidence," *id.*, Father specifically declined the opportunity to question Mother's

attorney about her fee affidavit and did not ask to present any evidence. We conclude that a hearing was held on this issue.

[17] Father's next argument is that he was "substantially justified" when he withheld a copy of his employment contract from Mother and did not provide updated paystubs. *See Huber v. Montgomery Cty. Sheriff*, 940 N.E.2d 1182, 1186 (Ind. Ct. App. 2010) ("A person is 'substantially justified' . . . in resisting discovery, for purposes of avoiding sanctions provided by Trial Rule 37(A)(4), if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery."). During the hearing, Father's attorney argued that Father was substantially justified in his actions because the employment contract was subject to a nondisclosure agreement. The court did not accept this argument, noting that Father's attorney could have filed the employment contract with the court and marked it "for attorney eyes only" or sought a protective order to limit who could see it. Tr. p. 7; *see also* Ind. Trial Rule 26(C)(2), (7) (providing that a court may order that "discovery may be had only on specified terms and conditions" and that a trade secret or other confidential commercial information "be disclosed only in a designated way"). Instead, Father chose to simply withhold the document. As for the paystubs, although Father claims that he provided "many" of them, Appellant's Br. p. 18, he did not provide updated ones despite Mother's request for updated ones and the trial court's order that he provide them, Tr. p. 18 (trial court: "Why didn't you ever provide those most recent paystubs until right now in open Court with me in the robe using county resources to force you to do

that . . . even though I ordered you to do it at least, I think, twice?").
Accordingly, Father was not substantially justified in his actions.

[18] Father's final argument is that, even if an award of attorney's fees was justified, "the actual amount ordered to be paid was erroneous" because it included fees "unrelated to [Mother's] expenses in making her motion to compel." Appellant's Br. p. 20. But Father did not make this argument to the trial court. When given the opportunity to question Mother's attorney about her fees, Father declined. Instead, Father's attorney made a generalized argument to the court as to why Father was substantially justified in his actions, and therefore no attorney's fees should be awarded. *See* Tr. pp. 50-53. Accordingly, Father has waived this argument on appeal. *Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012) (concluding that mother's attorney-fee argument was waived because it was raised for the first time on appeal), *trans. denied*.

[19] Affirmed.

Riley, J., and Kirsch, J., concur.