FILED

Oct 27 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

James F. Groves
Lee, Groves and Zalas
South Bend, Indiana

ATTORNEY FOR APPELLEE

Ann Marie Waldron
Waldron Law, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

University of Notre Dame,
*Appellant-Defendant,*

v.

Carol H. Bahney,

*Appellee-Plaintiff*

October 27, 2020

Court of Appeals Case No.
20A-CT-219

Appeal from the
St. Joseph Superior Court

The Honorable
Steven L. Hostetler, Judge

Trial Court Cause No.
71D07-1612-CT-545

**Vaidik, Judge.**

# Case Summary

[1]     Carol H. Bahney sued the University of Notre Dame after she fell at a basketball game. A jury found Bahney primarily at fault for the fall and returned a verdict for Notre Dame. Bahney then moved for a new trial under Indiana Trial Rule 60(B)(3) based primarily on Notre Dame's failure to notify

her before trial that a Notre Dame employee had testified incorrectly at a deposition. The trial court granted Bahney's motion and ordered a new trial. We reverse.

## Facts and Procedural History

On December 13, 2014, Bahney and some friends were at the Purcell Pavilion on Notre Dame's campus to watch a Notre Dame women's basketball game. While walking on the wooden floor behind one of the baskets, Bahney tripped and fell onto a four-to-five-inch riser that was set up in front of the stands at the end of the court. As a result, she broke her shoulder.

Two years later, Bahney sued Notre Dame, alleging that it "negligently failed to maintain a safe and unobstructed floor" and "failed to warn plaintiff of the floor's defective condition[.]" Appellant's App. Vol. II p. 18. Shortly thereafter, Notre Dame's attorney had photographs taken of the area of the fall and provided them to Bahney. The following photograph shows the riser (the white platform):



Ex. 3. At a deposition in September 2017, Joyce Harmon—who was at the game with Bahney and who was walking in front of Bahney when she fell—was asked about the photograph. She testified that it accurately depicted the riser but that the tables and chairs were not on the riser at the time of the fall. She suspected that Bahney did not see the riser and tripped over it. (Bahney herself could not recall much about the incident, so Harmon was her primary liability witness.)

[4] Trial was eventually scheduled to begin on November 20, 2019. At a deposition held two weeks before trial, Notre Dame Associate Athletic Director Monica Cundiff testified that she believed the tables and chairs were on the riser when Bahney fell, as depicted in the photograph. After the deposition, Notre Dame's attorney ask Cundiff if there was any way she could confirm that there were tables and chairs on the riser when Bahney fell. Cundiff found video of the game on YouTube and saw "that the tables weren't there." Tr. Vol. III p. 39. At some point before trial, Cundiff relayed this information to Notre Dame's attorney, explaining that "sometimes during a women's game they don't have the table" because "there aren't as many press for a women's game as for men." *Id.*; *see also* Appellant's Br. p. 7. However, Notre Dame's attorney did not relay this information to Bahney.

[5] The jury trial began as scheduled on November 20. Bahney's theory (as detailed in her opening statement) was that

> the riser wasn't marked other than having some little yellow tape around it. It's very low to the ground, not very easily seen,

nothing to draw attention to it, no signs, watch your step, no one there saying watch your step. Nothing to warn them that this riser is there and is a tripping hazard.

Tr. Vol. II p. 41. Harmon again testified that there were no tables on the riser when Bahney fell. She clarified that there were some chairs but said they were "way back" on the riser (not at the front of the riser, as depicted in the photograph). *Id.* at 106. She also stated her belief that Bahney had tripped on the riser.

[6] Notre Dame's sole witness was Cundiff. To Bahney's surprise, Cundiff testified that her deposition testimony was incorrect because the photograph actually depicted the setup for a men's basketball game and, for the women's game at issue, there were no tables where Bahney fell and "the chairs would have been pushed back." *Id.* at 230. She acknowledged that the tables and chairs being on the riser as depicted in the photograph would provide "a visual cue three or four feet off the ground that someone walking in this area can't just continue to walk forward, you're going to have to go to around this riser[.]" *Id.* at 229. Nonetheless, the jury found Bahney 90% at fault and returned a verdict for Notre Dame.

[7] A month later, Bahney filed a motion that was labeled as a motion to correct error under Indiana Trial Rule 59 but that was otherwise framed as a motion for relief from judgment under Indiana Trial Rule 60(B)(3), which allows a trial court to set aside a judgment based on "misconduct of an adverse party." Bahney argued that Notre Dame was required by Trial Rule 26(E) to

"seasonably" amend Cundiff's incorrect deposition testimony. She alleged that had Notre Dame done so she "could have focused on other issues such as the markings on the risers or other warnings rather than wasting time on what were actually unnecessary issues" and "a supplemental request could have been made for accurate pictures of the set up for a women's basketball game." Appellant's App. Vol. II pp. 44-45. Bahney asserted that "[t]his inability to focus on the true issues at trial prevented Bahney from 'fully and fairly' presenting her case and did cause her prejudice." *Id.* at 45.

[8] After a hearing, the trial court issued an order granting Bahney's motion and vacating the judgment. The court said it was "a very close call" but ultimately concluded that Notre Dame failed to comply with Trial Rule 26(E) and that this "noncompliance likely interfered to some extent with the case Ms. Bahney would otherwise have presented." *Id.* at 15-16.

[9] Notre Dame now appeals.

# Discussion and Decision

[10] Notre Dame contends that the trial court erred by setting aside the judgment and ordering a new trial under Trial Rule 60(B)(3). It first argues that the trial court should have treated Bahney's motion as a motion to correct error under Trial Rule 59, as Bahney labeled it, rather than as a motion for relief from judgment under Rule 60(B)(3), and that Bahney did not satisfy the requirements of Rule 59. But as noted above, notwithstanding the title and the first sentence,

the motion was in substance a motion under Rule 60(B)(3). *See id.* at 40-45. Rule 60(B)(3) provides that a trial court may relieve a party from a judgment based on fraud, misrepresentation, "or other misconduct of an adverse party[.]" Bahney's motion accused Notre Dame of "misconduct," expressly invoked "Trial Rule 60," and relied extensively on our Supreme Court's discussion of Rule 60(B)(3) in *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65 (Ind. 2006). *Id.* at 43-44. The trial court properly treated the motion as one under Rule 60(B)(3).

[11] Notre Dame argues in the alternative that Bahney was not entitled to relief under Rule 60(B)(3). "A grant of equitable relief under Indiana Trial Rule 60 is within the discretion of the trial court." *Outback Steakhouse*, 856 N.E.2d at 72. Accordingly, we review a trial court's ruling on a Rule 60 motion for an abuse of discretion. *Id.*[1]

[12] A plaintiff seeking relief for misconduct under Rule 60(B)(3) must (1) show that the defendant engaged in misconduct, (2) show that the misconduct prevented the plaintiff from fully and fairly presenting her case at trial, and (3) make a prima facie showing that she has a meritorious claim. *Cleveland v. Clarian Health Partners, Inc.*, 976 N.E.2d 748, 757 (Ind. Ct. App. 2012), *reh'g denied*, *trans.*

---

[1] Bahney asserts that "the Trial Court's decision to award a new trial is cloaked with 'a strong presumption of correctness.'" Appellee's Br. p. 9. The case she cites for that proposition, however, says that the presumption applies when a trial court grants a new trial under Trial Rule 59. *See Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013), *reh'g denied*. Here, as we just explained, the trial court did not grant a new trial under Trial Rule 59. But even if the same presumption of correctness applies to the grant of a new trial under Rule 60(B)(3), it has been rebutted in this case.

*denied*. Notre Dame contends that Bahney failed to make any of the three required showings.

[13] We agree with the trial court that Notre Dame's failure to correct Cundiff's deposition testimony before trial violated Trial Rule 26(E) and constituted "misconduct" under Rule 60(B)(3), even if it was not an intentional concealment. *See Outback Steakhouse*, 856 N.E.2d at 73 (holding that misconduct under Rule 60(B)(3) "can include both negligent and intentional violations of Indiana's discovery rules"). However, we conclude that Bahney failed to show that this misconduct prevented her from fully and fairly presenting her case at trial. Such a showing is required because Rule 60(B)(3) "creates a limited exception to the general rule of finality of judgments." *Id.* If a party cannot show that the misconduct "**substantially** prejudiced the party's presentation of the party's case, a court should not set aside an otherwise final judgment." *Id.* (emphasis added).

[14] In concluding that Bahney made this required showing, the trial court noted only that Notre Dame's failure to correct Cundiff's deposition testimony before trial "likely interfered to some extent with the case Ms. Bahney would otherwise have presented." The court did not go into any further detail about what Bahney might have done differently. For her part, Bahney does not deny that it helped her case when Cundiff corrected herself and testified at trial that there were no tables on the riser when Bahney fell. Rather, she argues, as she did in the trial court, that had she learned earlier that Cundiff would be correcting her deposition testimony "she could have focused on other issues

such as the markings on the risers or other warnings[.]" Appellee's Br. p. 13. She contends that, instead, she was "forced to focus on reasons why the set up for that particular game was different than 'normal.'" *Id.* There are two problems with this argument. First, nothing in the record suggests that Bahney was restricted in her ability to address the adequacy of "markings on the risers or other warnings" (such as the yellow and black warning tape shown in the photograph above), nor does Bahney identify what more she could have or would have done in that regard. Second, the record belies Bahney's claim that she spent a large amount of time trying to establish that there were no tables on the riser. Her questioning of Harmon about the absence of tables takes up about two pages of the transcript, *see* Tr. Vol. II pp. 105-07, and the only other witness she questioned about tables was Cundiff—Notre Dame's witness.

[15] Bahney asserts that Notre Dame "focus[ed] on the fact that there were tables and chairs on the risers throughout the trial until Cundiff's testimony." Appellee's Br. pp. 12-13. She cites nothing in the record to support that claim. And contrary to Bahney's claim, Notre Dame's attorney acknowledged in his opening statement that "during women's basketball games the tables are not on the steps[.]" Tr. Vol. II p. 45. Bahney also alleges that Notre Dame's attorney "questioned Joyce Harmon on cross-examination about the location of the tables and chairs, apparently attempting to question her memory of the event." Appellee's Br. p. 7. At no point during his cross-examination of Harmon did Notre Dame's attorney challenge Harmon's testimony that there were no tables on the riser when Bahney fell. *See* Tr. Vol. II pp. 123-35.

[16] Bahney also renews her argument that had she learned earlier that Cundiff's deposition testimony was incorrect "a supplemental request could have been made for accurate pictures of the set up for a women's basketball game." Appellee's Br. p. 13. But Harmon testified in her deposition in September 2017—over two years before trial—that there were no tables on the riser when Bahney fell. Bahney gives no reason she could not have arranged at some point during those two years to get photographs showing what the riser looks like without tables. She had every incentive to do so and simply did not. And Bahney cannot blame that failure on Cundiff's deposition testimony, which was not given until two weeks before trial.

[17] For these reasons, Bahney did not establish that Notre Dame's failure to correct Cundiff's deposition testimony before trial "substantially prejudiced" her presentation of her case, and the trial court abused its discretion by ordering a new trial on this ground.

[18] In addition to her argument about failing to correct Cundiff's deposition testimony, Bahney contends that Notre Dame committed other discovery violations that make a new trial appropriate. She notes that "Notre Dame knew at some point prior to trial that the pictures it had provided" did not accurately depict the setup at the time of the fall and "did not inform Bahney's counsel that the pictures were inaccurate." *Id.* at 12. But this was not a discovery violation separate from Notre Dame's failure to correct Cundiff's deposition testimony. The two things are inextricably intertwined. That is, if Notre Dame had corrected Cundiff's deposition testimony, Bahney would have known

conclusively that the photographs did not accurately depict the scene. Therefore, our holding above that Notre Dame's failure to correct Cundiff's deposition testimony does not justify a new trial is fatal to Bahney's argument about the photographs.

[19] Bahney also takes issue with the fact that Notre Dame did not identify Cundiff as a person with relevant knowledge until July 2019—four months before trial and after discovery had closed. Bahney asserts, "If Cundiff had been disclosed as a witness earlier, Bahney could have deposed her sooner and had time to follow up in more depth regarding her testimony and any records she may have possessed." *Id.* Bahney did not make this argument in her motion for a new trial. *See* Appellant's App. Vol. II pp. 40-45. As such, she waived it for purposes of appeal. *See Perez v. Mounce*, 110 N.E.3d 404, 409-10 (Ind. Ct. App. 2018). Waiver notwithstanding, if Bahney thought she was prejudiced by the late disclosure of Cundiff, the proper remedy was not taking her chances at trial and then getting a new trial if things did not go her way. Rather, she could have asked to reopen discovery or to push back the trial, or both, and asked for sanctions for the late disclosure. As far as we know, Bahney did none of those things. Moreover, Bahney does not specify what she could have or would have done to "follow up in more depth" if she had more time. Therefore, we have no basis on which to conclude that the late disclosure of Cundiff prevented Bahney from fully and fairly presenting her case.

[20] Finally, Bahney points out that Notre Dame failed to inform her that witness Gordon Martinczak would testify differently at trial than he did in his

deposition. The trial court rejected this as a basis for a new trial, and so do we. Martinczak was employed by the Notre Dame Fire Department at the time of Bahney's fall and talked to her immediately after the fall. In his deposition, he was asked if Bahney told him how she fell, and he answered, "She -- she fell on some -- a riser, she told me." Appellant's App. Vol. II p. 58. At trial, he testified that Bahney did not say anything to him about how she fell. Tr. Vol. II p. 153. The problem with Bahney's argument in this regard is that she fails to explain how Notre Dame's failure to notify her of this change prevented her from fully and fairly presenting her case. She says nothing about what she would have done differently had she known earlier. She says only that she "was surprised by this change in testimony and had to scramble to find the information in [Martinczak's] deposition to contradict his trial testimony." Appellee's Br. pp. 13-14. But even though Bahney had to "scramble" to do so, she confronted Martinczak about this discrepancy in front of the jury. *See* Tr. Vol. II pp. 154-56. As the trial court observed,

> [I]t is generally known that witnesses will, from time to time, testify differently at trial than they did during depositions. There are procedures for counsel to present such inconsistencies to the jury. Those procedures were followed in this case. The jury was fully informed that [Martinczak's] deposition testimony was different from his trial testimony. The change in [Martinczak's] testimony did not prevent Ms. Bahney from presenting her case at trial.

Appellant's App. Vol. II p. 13.

These other discovery issues are not sufficient to merit the grant of a new trial under Trial Rule 60(B)(3).

Reversed.

Weissmann, J., concurs.

Bailey, J., dissents with opinion.

## IN THE
# COURT OF APPEALS OF INDIANA

University of Notre Dame,
*Appellant-Defendant,*

v.

Carol H. Bahney,
*Appellee-Plaintiff.*

Court of Appeals Case No.
20A-CT-219

**Bailey, Judge, dissenting.**

"A grant of equitable relief under Indiana Trial Rule 60 is within the discretion of the trial court." *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 72 (Ind. 2006). Therefore, "[a] trial court's decision to grant a new trial carries a strong presumption of correctness." *Nature's Link, Inc. v. Przybyla*, 885 N.E.2d 709, 714 (Ind. Ct. App. 2008). I respectfully dissent from the majority decision to reverse that of the trial court, which had boots on the ground, and was best positioned to evaluate the propriety of equitable relief. The photographic misrepresentation – presented early and often – would have left an indelible impression on the jury. Yes, the jury was verbally informed that the photograph did not precisely depict the site of the fall, but then again, a picture is worth a thousand words.

[24] During her opening statement, Bahney claimed to have fallen on a metal riser, sight unseen, contending that there was nothing but yellow tape to warn her of the riser's existence. Notre Dame immediately proceeded to fill any blanks in Bahney's perception with the presentation of its centerpiece, the inaccurate photograph displaying an array of tables and chairs. Notre Dame's counsel obtained the court's permission to approach the jury during his opening statement, expressing his intent to "use some exhibits to explain some things" because Bahney "had no idea what caused her to trip and fall." (Tr. Vol. II, pg. 43.)

[25] Defense counsel then held up for jury viewing the inaccurate photograph, that he variously "explained" as follows: "this photo is of Sections 14 and 15 ... at the time of her fall there were chairs that were on this step … this photograph, which I am putting into evidence, is the area where they believe she may have fallen … during women's basketball, the tables are not on the steps but there are chairs left on the steps for spectators to sit in … this is a clearly visible riser and set of steps that accommodate these temporary tables and chairs … this condition has been there through thousands of people traversing." (*Id.* at 43-46.)

[26] Thus, in considering whether to grant equitable relief, it would be reasonable for the trial court to consider the human element associated with listening to counsel's inconsistent description of the view and seeing a photograph that did not fairly and accurately depict the scene. Additionally, one would expect the trial court to consider whether the jury's visual impression would be overcome

by Bahney's friend testifying that "this isn't the way it looked." (*Id.* at 106.) And, moreover, it is for the trial court to consider whether the jury gave any weight to the eventual "correction" by the assistant athletic director of her deposition testimony. As the final witness, she admitted that there were no tables and only chairs that were "pushed back." (*Id.* at 216.) These considerations, among many, would be appropriate for the trial court to ponder in evaluating whether equitable relief should be granted. Here, the trial court ultimately determined that Bahney did not receive a fair trial and was entitled to relief.

[27]     Aware that its own witness was repudiating her deposition testimony, Notre Dame's counsel was obligated under the tenets of Trial Rule 26(E)[2] to inform Bahney of this crucial development. Instead, the accuracy of the photograph, which was the centerpiece of the defense, would be contradicted by its witness

---

[2] Trial Rule 26(E) governs supplementation of discovery responses, providing:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to:

(a) the identity and location of persons having knowledge of discoverable matters, and

(b) the identity of each person expected to be called as an expert witness at trial, the subject-matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which

(a) he knows that the response was incorrect when made, or

(b) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses."

at the eleventh hour.  I have little difficulty believing that, had there been discovery compliance, Bahney would have moved to exclude the photograph from evidence and/or to introduce the video.[3]  The video of game day, if authentic, would have been the best evidence of the metal riser configuration.  That said, we are not conducting a line item or de novo review of Notre Dame's Trial Rule 26(E) compliance or Bahney's trial choices and strategy.  Rather, we are simply evaluating whether Bahney was entitled to equitable relief.  Because I cannot say as a matter of law that it was an abuse of discretion, I respectfully dissent.

---

[3] Monica Cundiff, the assistant athletic director, testified that she had viewed a video of highlights of game day but did not testify as to the source.  Later, when defense counsel argued against a motion for mistrial, he characterized the video as a YouTube video.  His argument suggests an apparent effort to persuade the trial court that the video was available and accessible to either party, as opposed to an official record in possession and control of the Notre Dame Athletic Department and subject to discovery.